# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | WILLIAM T. HART | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 03 C 2880 | DATE | MARCH 11, 2004 |
| CASE TITLE | AMEC CONSTRUCTIONS MANAGEMENT, INC. v. REGENT INSURANCE COMPANY | | |

MOTION: [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ■ **STATUS HEARING SET FOR APRIL 7, 2004 AT 11:00 a.m.**

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Plaintiff's motion for partial summary judgment [13] is granted in part and denied in part. Plaintiff is entitled to a declaration that it has the right to retain its own counsel in the <u>Hawver</u> case and be reimbursed by defendant. Defendant's motion for summary judgment is denied.

(11) ■ [For further detail see attached Memorandum Opinion and Order.]

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

AMEC CONSTRUCTIONS MANAGEMENT, )
INC., )
 )
 )
           Plaintiff, )
 )
      v. ) No. 03 C 2880
 )
REGENT INSURANCE COMPANY, )
 )
           Defendant. )

**MEMORANDUM OPINION AND ORDER**

MAR 1 2 2004

This case concerns defendant Regent Insurance Company's duty to defend plaintiff AMEC Construction Management, Inc. There is complete diversity of citizenship and the amount in controversy exceeds $75,000. AMEC was the general contractor at a construction site. An employee of a subcontractor was injured. The employee brought suit against a second subcontractor and AMEC. Regent insured the second subcontractor and Regent's policy also provides some coverage for AMEC. The question is whether a conflict of interest exists between Regent and AMEC such that AMEC is entitled to retain counsel of its choice. To the extent AMEC is entitled to choose its own counsel, a question exists regarding the rate that Regent is obliged to pay counsel.



AMEC has moved for partial summary judgment on its count seeking a declaratory judgment. In response to that motion, and without objection from AMEC, Regent requests that summary judgment be entered in its favor. Regent's motion can be considered even though a formal motion for summary judgment has not been filed.

On a motion for summary judgment, the entire record is considered with all reasonable inferences drawn in favor of the nonmovant and all factual disputes resolved in favor of the nonmovant. Turner v. J.V.D.B. & Associates, Inc., 330 F.3d 991, 994-95 (7th Cir. 2003); Palmer v. Marion County, 327 F.3d 588, 592 (7th Cir. 2003); Abrams v. Walker, 307 F.3d 650, 653-54 (7th Cir. 2002). Here, the facts generally are not in dispute. The following facts are taken as true for both parties' motions for summary judgment.

AMEC was hired as the general contractor to construct the Peninsula Hotel. Two of the subcontractors on the project were Tribco Construction Services and Gurtz Electric Co. Thomas Hawver, an employee of Tribco, alleged that he was injured at the construction site when he tripped over protruding electrical conduit. Hawver initially brought suit against AMEC and subsequently added Gurtz as a defendant. That lawsuit is pending in the Circuit Court of Cook County, Illinois.

AMEC has a general liability policy issued by Travelers Insurance Company. Gurtz has a general liability policy issued by Regent. AMEC was listed as an additional insured under the

Regent policy. The policy further provided: "Who is an Insured (Section II) is amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability arising out of 'your work' for that insured by or for you." The "your" and "you" in this quoted provision is Gurtz. "[T]hat insured," as used in this provision, refers to additional insureds such as AMEC. The policy defines "your work" as meaning:

> a. Work or operations performed by you or on your behalf; and
> b. Materials, parts or equipment furnished in connection with such work or operations.
>
> "Your work" includes:
> a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work;" and
> b. The providing or failure to provide warnings or instructions.

Initially, in the Hawver lawsuit, Travelers provided a defense for AMEC. AMEC was represented by attorneys at the law firm of Michael Best & Friedrich, LLC, which apparently has represented AMEC on other matters as well. On AMEC's behalf, Travelers sent notice to both Tribco's insurer and Regent requesting that both insurers defend and indemnify AMEC in the suit brought by Hawver. Regent "accept[ed] the tender of defense made by AMEC under a full reservation of rights." Regent stated that it may, at some future time, withdraw from the defense, refuse to make any indemnity payments, or otherwise contest coverage. Regent further stated that it may refuse to indemnify

AMEC "[t]o the extent any liability of AMEC arises out of its own affirmative breach of duty, and not out of the work or negligence of Gurtz Electric Company, Inc., [and therefore] AMEC is not an additional insured under the Regent Insurance Company policy."

Travelers, on behalf of AMEC, informed Regent that, since Regent had accepted the defense subject to a reservation of right, AMEC was entitled to select its own attorney and would continue to be represented by Michael Best. The parties were not able to reach any agreement as to Michael Best being allowed to represent AMEC. Regent also indicated that any possible reimbursement for using this law firm would be limited to Regent's usual fee scale topping out at $135.00 per hour, not a higher fee that Michael Best customarily charges to clients and apparently has charged to AMEC both in this litigation and prior representation.

Neither Gurtz nor AMEC will be liable to Hawver if, in the Hawver lawsuit, it is found that Hawver's injury was not caused by any negligence at the construction site, other than possible negligence by Hawver himself. If negligence is found to have caused injury to Hawver, then Gurtz's and AMEC's interests may diverge. AMEC may still be found liable even if Gurtz is not. For example, it may be found that Hawver's injury was caused by a negligently protruding conduit for which Gurtz had no responsibility, but for which AMEC was either directly responsible or responsible due to the conduct of another

subcontractor. In that situation, AMEC would have liability to Hawver without Gurtz also being liable. If the conduit was not part of Gurtz's "work," which could be likely in such a scenario, then AMEC would likely be liable without there being coverage from Regent. Thus, Regent has an interest in showing there was no negligence whatsoever, which benefits both AMEC and Gurtz. But Regent also has an interest in showing Gurtz was not responsible for any negligent condition that may have existed regardless of whether AMEC would still be responsible for that condition. Assuming there are possible facts to support it, it could even be in Regent's interest to attempt to show that AMEC (or another subcontractor based on whom AMEC may be vicariously liable), not Gurtz, was responsible for the conduit or other possible negligent condition that may have caused Hawver to fall. Even if Regent does not attempt to point a finger at AMEC, it is still true that Regent's own interests provide an incentive to show that any injury to Hawver occurred away from Gurtz's work without any regard for where the injury may have instead occurred. Pointing the finger away from Gurtz does not necessarily mean pointing to a different physical location for the injury. It may just mean showing that Gurtz was not the subcontractor responsible for installing a particular conduit or pipe on which Hawver allegedly was injured. There is no contention by Regent that the allegations of Hawver's complaint do not support these possibilities or that it is otherwise

certain, or even likely, that both the locale of Hawver's injury and the party responsible for the locale where Hawver was injured will not be an issue in Hawver's lawsuit.

AMEC also contends that the reservation of right itself indicates ground for conflict. AMEC contends the reservation of right asserts an additional ground for Regent denying indemnity to AMEC that is not contained in the policy. AMEC contends the reservation of right asserts that Regent need not indemnify AMEC and provide a defense if AMEC is contributorily negligent. That, however, is not an accurate description of the statement in the reservation of right. It is stated that AMEC would not be an additional insured entitled to indemnity if AMEC's liability arises from AMEC's own affirmative misconduct "<u>and</u> not out of the work or negligence of Gurtz." AMEC focuses on the first part of the statement, ignoring its conjunctive nature and the second requirement. This statement is consistent with the language of the policy. If taken at face value, it may even place an additional burden on Regent (affirmative misconduct by AMEC) in order to avoid indemnifying AMEC for possible liability.

Regent does not dispute AMEC's contention that a conflict between an insurer and insured may entitle the insured to select its own counsel. The disagreement is over what type of conflict must be shown in order for the insured to be entitled to that option. The parties agree that Illinois law applies in resolving this issue.

An insurer must allow the insured to select its own counsel when there is a "serious conflict" between the insurer and insured. Littlefield v. McGuffey, 979 F.2d 101, 105-06 & n.3 (7th Cir. 1992) (quoting Maneikis v. St. Paul Insurance Co. of Illinois, 655 F.2d 818, 825 (7th Cir. 1981)); Sears, Roebuck & Co. v. Emerson Electric Co., 2001 WL 1155273 *6 (N.D. Ill. Sept. 28, 2001). Construing Illinois law, the Seventh Circuit held that there is no serious conflict unless "the insurer and the insured were complete adversaries on a crucial issue which would necessarily be decided either one way or the other if liability [were] imposed." Maneikis, 655 F.2d at 825. This "exception requires an either/or situation" in which there will be one finding that favors the insured or another that favors the insurer. Littlefield, 979 F.2d at 106. Subsequent to Maneikis, however, the Illinois courts have held that this is not the only circumstance that constitutes a serious conflict. See Nandorf, Inc. v. CNA Insurance Cos., 134 Ill. App. 3d 134, 479 N.E.2d 988, 992 (1st Dist. 1985); Littlefield, 979 F.2d at 106; Emerson Electric, 2001 WL 1155273 at *3. In Nandorf, the insurer was found to have a conflict where the insured faces a small claim for compensatory damages which is subject to indemnity by the insurer, but a large claim for punitive damages which is not subject to indemnity. 479 N.E.2d at 992. "Under Nandorf, then, a conflict may exist when the insurer lacks incentive to defend its insured on a portion of the claims that appear

not to be covered by the insurance contract." Littlefield, 979 F.2d at 106. See also American Country Insurance Co. v. Williams, 339 Ill. App. 3d 835, 791 N.E.2d 1268, 1276 (1st Dist. 2003) ("The test of whether a conflict of interest exists . . . is if, in comparing the allegations of the complaint to the terms of the policy, the insurer's interests would be furthered by providing a less than vigorous defense to the allegations."); Illinois Masonic Medical Center v. Turegum Insurance Co., 168 Ill. App. 3d 158, 522 N.E.2d 611, 613 (1st Dist. 1988) (same). Illinois courts have "also found that where an insurer represents two insureds whose interests in the litigation are adverse, a conflict of interest exists if, in order for the insurer to adequately represent one of its insureds, it would have to pick a strategy that would harm the other." Emerson Electric, 2001 WL 1155273 at *3 (citing Murphy v. Urso, 88 Ill. 2d 444, 430 N.E.2d 1079, 1083 (1981)).

In Illinois Masonic, the insured was a hospital. The underlying litigation was a claim for medical malpractice that occurred during one or more of three hospital stays. Two of those hospital stays occurred after the policy with the insurer had expired. It was held that an adequate conflict existed justifying the hospital's retention of its own counsel because the insurer's "best interest (a) lie in a finding that the malpractice, if any, occurred during one or both of the two post-policy periods and (b) would be furthered by a less than vigorous

defense to the allegations relating thereto." 522 N.E.2d at 616. That situation is similar to the present case. Here, Regent has an incentive to show that the negligent conditions, if any, that caused Hawver's injury did not exist in the work of Gurtz, but little incentive to show that negligent conditions did not exist in the work of AMEC itself or one of AMEC's other subcontractors.

Regent argues that the present situation is distinguishable because insurance coverage for AMEC does not track the question of causation that would be at issue in Hawver's lawsuit. Regent contends that distinctions must be recognized as between the proximate causation at issue in Hawver's lawsuit and the "arising out of" language contained in the policy's definition of additional insureds. Regent contends that liability coverage arising out of Gurtz's work is broader than the question of an injury proximately caused by Gurtz's work. Illinois case law holds that "arising out of" language in an insurance policy is broader than proximate causation in that it is satisfied by "but for" causation. Liberty Mutual Insurance Co. v. Westfield Insurance Co., 301 Ill. App. 3d 49, 703 N.E.2d 439, 442 (1st Dist. 1998); West American Insurance Co. v. Bedwell, 306 Ill. App. 3d 861, 715 N.E.2d 759, 763-64 (3d Dist.), appeal denied, 186 Ill. 2d 591, 723 N.E.2d 1170 (1999); Goodheart-Willcox Co. v. First National Insurance Co. of America, Inc., 2001 WL 501194 *7 (N.D. Ill. May 8, 2001). While that general proposition is true and applicable to the "arising out

of" language contained in the policy presently at issue, the Liberty Mutual case cited by Regent, as well as the cases cited in Liberty Mutual, all involve situations that are distinguishable from the present case. In each of those cases, the plaintiff in the underlying lawsuit was an employee of one of the insureds and thus the plaintiff's injury had a but-for relationship to the insured's work (regardless of any proximate causation) because the employee would not have been in the particular situation but for being employed by the insured. See Liberty Mutual, 703 N.E.2d at 442-43; American States Insurance Co. v. Liberty Mutual Insurance Co., 291 Ill. App. 3d 336, 683 N.E.2d 510 (1st Dist. 1997); Shell Oil Co. v. AC & S, Inc., 271 Ill. App. 3d 898, 649 N.E.2d 946 (5th Dist. 1995); Maryland Casualty Co. v. Chicago & North Western Transportation Co., 126 Ill. App. 3d 150, 466 N.E.2d 1091 (1st Dist. 1984).

In the present case, Hawver was not an employee of either of the possible insureds, Gurtz or AMEC. Scenarios can be conceived where an injury to Hawver might have a but-for relationship to Gurtz's work without also having a proximate cause relationship. For example, if Hawver was coming to socialize with a Gurtz employee when he tripped over conduit that was not part of Gurtz's work, perhaps it could be found that Hawver's injury was not proximately caused by Gurtz's work while still having a but-for relationship to Gurtz's work. That, however, is not necessarily a likely scenario. More likely, a

finding of liability as against AMEC, but not Gurtz, would result in no coverage for AMEC under the Regent policy. Even if a finding as to no liability for Gurtz would not necessarily completely eliminate the possibility of AMEC being covered for any liability imposed on it, such findings would likely eliminate the principle basis for coverage. A finding of no liability for Gurtz very well may collaterally estop or judicially estop AMEC from contending that the injuries to Hawver were caused by Gurtz's work, which would ordinarily be the principal basis for contending the liability arose from Gurtz's work. Thus, regardless of the distinctions between the concepts of proximate cause and arising out, Regent still lacks a strong incentive to vigorously defend AMEC against accusations that Hawver was injured in an area of the construction site that was not part of Gurtz's work.

For the foregoing reasons, Regent would have a serious conflict in defending AMEC. Therefore, AMEC is entitled to select its own counsel for the Hawver lawsuit and have Regent reimburse it for its costs and legal fees.

The other issue raised by the parties is the question of the hourly rate that Regent should be required to pay the attorneys retained by AMEC. In response to summary judgment, Regent provides letters it sent to AMEC in which Regent stated that, for lawsuits it is required to defend in the Chicago area, Regent ordinarily retains attorneys who are paid between $95.00

and $135.00 per hour. Without submitting any supporting summary judgment materials or specifically setting forth Michael Best's hourly fee, AMEC indicates that Michael Best's standard hourly fee is higher than $135.00 per hour. AMEC contends Regent should be required to pay Michael Best's standard fee and further contends that Michael Best's standard fee is reasonable. AMEC represents that it has paid Michael Best's standard fee in the past and contends such payments would be conclusive evidence that the fee is a reasonable market rate. Although this representation is made in AMEC's reply, no affidavit or other appropriate summary judgment material is submitted to support this representation.

In AMEC's opening brief, AMEC asserted, without any supporting legal argument or factual support, that Regent should be required to pay Michael Best's standard rate. In its answer brief, Regent pointed to the lack of support for AMEC's assertion and contended, without citing any legal support, that the fee to be paid Michael Best had to be reasonable. AMEC then responded by providing a legal argument, agreeing that the applicable legal standard is reasonableness, see Taco Bell Corp. v. Continental Casualty Co., 2003 WL 1475035 *12-13 (N.D. Ill. March 17, 2003), and contending that Michael Best's fee is reasonable because AMEC purportedly has paid it in the past. It is true that a past history of the rates being paid is strong evidence that the rates are reasonable. See id. Perhaps Regent could produce sufficient

countervailing evidence to support a factual dispute as to whether Michael Best's hourly rate is reasonable. Presently, the issue cannot be resolved by the court because AMEC has submitted no evidence in support of its contention. Also, the issue was not sufficiently raised in AMEC's opening brief so Regent was not required to respond.

AMEC is entitled to partial summary judgment as to that part of Count I seeking a declaration that it is entitled to retain its own counsel to represent it in the Hawver litigation and that Regent is required to reimburse AMEC's reasonable costs. The issue of whether Michael Best's standard rate is reasonable cannot presently be resolved. Also remaining to be resolved is the Count II contract claim which seeks damages for past costs in the Hawver litigation that have not yet been reimbursed. No judgment will be entered until all matters are resolved. It is expected that the parties will be able to resolve the issue of a reasonable fee and any amount due for past costs. Within one week the parties shall meet to discuss resolving the remaining fee and reimbursement issue. If requested by Regent, AMEC shall provide sufficient records establishing the costs it has already incurred. See Taco Bell Corp. v. Continental Casualty Co., 2003 WL 21372473 *2 (N.D. Ill. June 11, 2003). At the next status hearing the parties shall report whether they have resolved this

issue[1] and, if not, suggest appropriate further proceedings for its resolution. To the extent the parties can resolve the remaining issue and desire that a judgment be entered, they should submit a draft judgment order.

IT IS THEREFORE ORDERED that plaintiff's motion for partial summary judgment [13] is granted in part and denied in part. Plaintiff is entitled to a declaration that it has the right to retain its own counsel in the <u>Hawver</u> case and be reimbursed by defendant. Defendant's motion for summary judgment is denied. A status hearing will be held on April 7, 2004 at 11:00 a.m.

ENTER:

*[signature]*
UNITED STATES DISTRICT JUDGE

DATED: March 11, 2004

---

[1]Hopefully, the parties will be able to settle their dispute. But even if Regent is not willing to give up its right to appeal the ruling that AMEC is entitled to retain its own counsel, it still may be able to agree with AMEC as to an appropriate hourly rate and past reimbursement. A judgment could still be entered that would not preclude Regent's right to appeal.